Ashok **CHANDA**, et al.,

v.

**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, D.C. Department of Human Services, Metropolitan Life Insurance Co.**

Civ. No. 90–2187.

United States District Court, District of Columbia.

June 8, 1993.

Thomas P. Brown, III, Brown & Tighe, Washington, DC, for plaintiffs.

Claire M. Whitaker, U.S. Atty's Office, Washington, DC, for OPM.

Rena K. Schild, D.C. Corp. Counsel, Washington, DC, for D.C. Dept. of Human Services.

Cornelia E. Dude, Metropolitan Life Ins. Co., New York City, James F. Bromley, I, Bromley, Green & Walsh, Washington, DC, for Metropolitan Life Ins. Co.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the Court on each party's motion for judgment following a mistrial declared on March 25, 1993. Plaintiffs have also filed a motion for a new trial against the District of Columbia and Metropolitan Life (MetLife) and a motion to strike these defendants' motions for judgment as not being timely filed. Federal defendant moves pursuant to Fed.R.Civ.P. 52(c) for judgment as a matter of law and argues that plaintiffs have failed to present evidence to support their claim that satisfactory proof of eligibility was submitted to the Office of Federal Employees' Group Life Insurance (OFEGLI) to increase the decedent's, Mala Chatterjee's, life insurance coverage by Options A and B. MetLife and the District of Columbia move for judgment pursuant to Fed.R.Civ.P. 50(b) on the same grounds.

### I. *Findings of Fact*

This is a suit for the proceeds of a life insurance policy brought by the personal representative of the Estate of Mala Chatterjee, Asok Chanda, the two children of decedent, Amit Chanda and Jeet Chanda, and Sandhya Chatterjee, the mother of decedent. It is founded on the breach of terms of a Certificate of Insurance issued to Mala Chatterjee by the defendants. The Certificate was based upon an underlying group life insurance policy issued by MetLife to the Office of Personnel Management (OPM). On March 22–25, 1993, this matter was tried before the Court on the claims against the federal defendant and before a jury on the claims against the other defendants. The case tried to the jury resulted in a mistrial when the jury was unable to reach a verdict.

Mala Chatterjee was employed by the defendant District of Columbia in the Department of Human Services (DHS) from 1974 until her death on September 7, 1987. As a DHS employee, she was able to obtain a federal government life insurance policy (Federal Employees Group Life Insurance or FEGLI) through defendant United States

434

OPM. The insurance policy was underwritten and administered by defendant MetLife. At issue is whether the decedent qualified for and received enhanced life insurance coverage.

In order to obtain increased life insurance coverage, established employees, such as decedent, must follow a different procedure than new employees. Ms. Frankie Wheeler, supervisor of employee relations specialists, testified that new employees are not required to provide, on a Form 2822, proof of eligibility. Established employees, on the other hand, must submit a Form 2822, which is the result of a physical examination submitted directly to OFEGLI for review and approval. The OFEGLI Plan · Description Booklet, Form 2817A, which is part of the certificate of insurance, indicates that Form 2822 is a prerequisite to obtaining the additional life insurance.

Ms. Wheeler testified that the personnel office completes Part A of the Form 2822 and then advises the employee to take this form to his or her physician for completion. The employee must complete Part B in front of their physician. The physician then completes Part C, the medical portion, signs and certifies the form and forwards it to OFEGLI for review and approval. Upon receipt of the form by OFEGLI, OFEGLI reviews it to determine whether the employee is eligible based on the medical evidence submitted. Both Ms. Wheeler and Mr. Joseph Zulli, director of FEGLI for MetLife, testified that after the form is reviewed by OFEGLI, it is marked with a notation of approval or disapproval and returned to the employing agency. If the form is returned approved, the agency notifies the employee to come into the office to complete the Form 2817, which is the election of additional coverage.

Plaintiffs introduced no direct evidence that a Form 2822 for Mala Chatterjee had been completed, sent to and approved by OFEGLI. The evidence demonstrated that decedent applied for and received basic FEGLI coverage. On February 12, 1986, decedent applied for Option A and Option B, which would have increased her coverage. Decedent completed a Form 2817, Election of Additional Life Insurance. Ms. Shirley Robinson, an employee relations specialist with the District, assumed that Mala Chatterjee was a new employee and mistakenly certified her as eligible for insurance on February 14, 1986. Subsequently, deductions were taken from decedent's pay checks from the date she was declared eligible until the date of her death in September 1987.

Defendants, on the other hand, introduced evidence which showed that no record of a Form 2822 existed in either the records of the District of Columbia government or with OFEGLI. Ms. Wheeler testified that she reviewed Mala Chatterjee's personnel file and that there was no Form 2822 filled out by a physician in it. She also reviewed the decedent's payroll file but did not find an executed Form 2822 in it. Ms. Wheeler also testified that she had seen a Form 2821 on which Mr. Charles Davis, Chief of the Pay and Retirement Division of the District of Columbia Government, had certified that Mala Chatterjee was covered under Options A and B at the time of her death. This form, dated November 24, 1987, was introduced into evidence along with a later form (dated November 15, 1990) signed by Joan C. Sweeney, which certified that the decedent was not eligible for Options A and B at the time of her death. However, there was no testimony concerning the signatures on these forms, nor the general procedure followed in preparing the forms.

Mr. William Byrd, who preceded Ms. Wheeler as chief of employee relations division from 1982 to 1992, also testified that he reviewed Dr. Chatterjee's personnel file and did not find a Form 2822 nor had he seen such a form for Dr. Chatterjee. Mr. Zulli testified that the records of OFEGLI were searched for the period October 1, 1985 to September 30, 1987, for a Form 2822 for decedent, but none was located. No record for Mala Chatterjee was maintained by OFEGLI until a Claim File was created after her death.

Defendants also introduced evidence demonstrating that the records of Mala Chatterjee's treating physician, Dr. Abraham Danish, did not contain any evidence of a Form 2822. Dr. Danish testified that he had no recollection of ever having completed a Form

2822 prior to decedent's death nor did his medical file reflect that one was completed. In fact, to Dr. Danish's knowledge, the decedent was never given a physical examination specifically for the purpose of making a life insurance report. Dr. Danish also testified that his office would keep copies of any life insurance form filled out for a patient and that he could not recall ever having had a reason to discard such a form. Mr. Chanda, decedent's brother, also testified that he found no Form 2822 when reviewing her files.

The defendants also introduced evidence showing that the deceased had a medical condition which disqualified her from increasing her life insurance coverage in February 1986. Dr. Danish testified that based on his medical records, if he had completed a Form 2822 in February 1986, he would have indicated that she suffered from high blood pressure, chronic ulcerative colitis, anemia and was under treatment with a steroid called Prednisone. Dr. Barry Reed, an underwriter for MetLife, was qualified at trial as an expert. Dr. Reed testified that he had reviewed Dr. Chatterjee's medical records to determine whether her medical condition would disqualify her from obtaining the additional insurance coverage she sought under the MetLife underwriting guidelines. Dr. Reed testified that she would not have qualified under the MetLife guidelines for the policy for which she applied.

## II. *Conclusions of Law*

### A. *Whether there was satisfactory proof of eligibility*

■ The first question before the Court is whether plaintiffs have proven by a preponderance of the evidence that decedent provided satisfactory proof of eligibility for the increased life insurance coverage which she sought in February 1986. *See True v. Office of Personnel Management,* 926 F.2d 1151, 1153 (Fed.Cir.1991) (applicant must demonstrate by a preponderance of the evidence his entitlement to the retirement benefit he seeks); *Cheeseman v. Office of Personnel*

*Management,* 791 F.2d 138, 141 (Fed.Cir. 1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987).

The Federal Employees' Group Life Insurance Act (FEGLI Act) established the life insurance program for federal government employees and D.C. Governmental employees who qualify for it. 5 U.S.C. § 8700 *et seq.* The federal government itself does not act as an insurer under the FEGLI Act. It merely purchases coverage from MetLife on behalf of its employees. Under the FEGLI Act, an employee is automatically insured for Basic Life on the date he becomes eligible, generally the first day of duty. 5 U.S.C. § 8702.

There are separate requirements for eligibility for increased life insurance coverage under Option A and Option B, set forth at 5 C.F.R. §§ 871.205 and 872.205. An employee who has previously declined Option A may subsequently elect it after at least one year has elapsed since the declination and the employee furnishes satisfactory evidence of insurability, the results of a physical examination approved by OFEGLI. Section 5 C.F.R. § 872.205(a) sets forth identical requirements for obtaining Option B after initially declining such coverage. In addition, the insurance policy between OPM and MetLife also provides that an employee who has declined optional coverage may request the additional coverage but only by furnishing, at his own expense, evidence of insurability satisfactory to the OFEGLI.

There is no dispute that the decedent met the first requirement: it had been more than one year since she had declined Option A and B coverage. However, plaintiffs have failed to meet their burden of proving that proof of eligibility, a Form 2822, was submitted from Dr. Chatterjee's doctor to OFEGLI, and that this proof was satisfactory evidence of insurability. First, plaintiffs presented only one document as evidence that decedent had met the conditions for increasing her life insurance coverage, the Form 2817.[1] Ms. Shirley Robinson certified on the Form 2817 that

---

1. Ms. Wheeler merely testified that she had seen the Form 2821 certified by Mr. Davis. As defendants contend, this post-death certification by

Mr. Davis was the result of Ms. Robinson's erroneous certification of eligibility and does not create entitlement to the enhanced coverage.

Mala Chatterjee was eligible for the life insurance coverage which she had selected. Plaintiffs argue that before the decedent could have been declared eligible, she had to have submitted the necessary evidence of insurability on the Form 2822. Therefore, plaintiffs contend, Ms. Robinson's certification of the decedent as eligible, and the subsequent withdrawal of premiums from her paycheck, necessarily means that the requirements for the Form 2822 had been satisfied.

Plaintiffs' argument, however, shifts the burden of proof to the defendants, requiring proof of the negative, that the Form 2822 did not exist, notwithstanding Ms. Robinson's mistake. As defendants note, though, courts have rejected the requirement that the government prove the negative. *See Cheeseman,* 791 F.2d at 141 (where the keeper of facts is silent, just as plaintiff cannot prove the affirmative, the government cannot prove the negative). In addition, defendants did present evidence that the records of the D.C. Personnel Office, the D.C. Payroll Office, the files of decedent's treating physician and the files of OFEGLI had all been searched and no evidence had been found of the submission to OFEGLI of a Form 2822 which was contemporaneous with decedent's application for increased coverage in February 1986.

It is uncontested that money necessary to pay the premiums for Options A and B was deducted from Dr. Chatterjee's paycheck from the date she was declared eligible until her death. Plaintiffs contend that by making the deductions, the payroll department was confirming that proper evidence of Dr. Chatterjee's insurability had been received. Ms. Frankie Wheeler testified, however, that the payroll division does not make a determination of an applicant's eligibility, but merely processes the information supplied by the personnel department. As defendants note, the payroll deductions were the result of the erroneous certification by Ms. Robinson, not the result of a determination that the decedent was eligible for increased coverage.

Second, assuming *arguendo* that a Form 2822 was submitted by decedent's doctor on or about February 1986, decedent would not have qualified for the increased insurance coverage she sought. Dr. Chatterjee's medical condition at that time would have prevented her from furnishing the required satisfactory evidence of insurability. Testimony from the decedent's brother and deposition testimony from the decedent's mother demonstrated that decedent's medical condition did not appear to adversely impact on her work or other activities. However, defendants produced testimony from Dr. Danish, the decedent's treating physician, and the medical underwriter, Dr. Reed, which showed that decedent's colitis condition disqualified her from increased life insurance. Therefore, even if the decedent had provided a Form 2822 to OFEGLI, she would not have been eligible for the increased life insurance coverage because she could not have provided satisfactory proof of eligibility.

In conclusion, plaintiffs have failed to carry their burden of proving by a preponderance of the evidence that Dr. Chatterjee submitted satisfactory proof of eligibility in order to qualify for increased life insurance. Therefore, the Court grants judgment for the federal defendant.

B. *Plaintiffs' Case against District of Columbia and MetLife*

The case against the District of Columbia and MetLife was tried before a jury. These defendants moved for judgment as a matter of law at the close of all of the evidence. The Court denied the motions without prejudice. The trial subsequently ended in a mistrial when the jury was unable to reach a verdict. Defendants now move for renewed judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), which provides in pertinent part that:

[w]henever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment ... If no verdict was returned, the court may, in disposing of the renewed motion, direct the entry of judgment as a matter of law or may order a new trial.

■ The standard for awarding a renewed judgment as a matter of law is the same as that governing rulings on a motion for judgment as a matter of law (previously a motion for directed verdict): judgment is proper only if

> viewing the evidence in the light most favorable to the plaintiff and giving him the advantage of every fair and reasonable inference that the evidence may permit, there can be but one reasonable conclusion drawn.

*Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 827 (D.C.Cir.1988), *cert. denied*, 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989); *Morgan v. District of Columbia*, 824 F.2d 1049, 1056 (D.C.Cir.1987) (standard for judgment n.o.v.).

■ Incorporating the discussion of plaintiffs' evidence *supra*, the Court holds that a jury could not reasonably find that plaintiffs have met their burden and that the only reasonable conclusion is that no satisfactory evidence of eligibility for the decedent existed. *See Richardson*, 857 F.2d at 827 (judgment proper when only one reasonable conclusion can be drawn). Therefore, the Court grants judgment as a matter of law for defendants District of Columbia and MetLife.

## C. *Whether defendants are estopped from denying coverage*

■ In its Memorandum Order of August 20, 1992, the Court reserved judgment on the issue of whether

> does the fact that the District, via its employee, erroneously represented to the decedent that she was eligible for the enhanced coverage and then withheld premiums for the enhanced coverage estop any or all of the defendants from denying her that coverage.

Federal defendant now moves for judgment or dismissal on the ground that the government cannot be estopped from denying plaintiffs' claim. The District of Columbia and MetLife have not briefed this issue; however, the discussion on estoppel applies to their case as well.

As discussed *supra*, plaintiffs failed to establish that Mala Chatterjee submitted the required evidence of insurability to support her entitlements to Options A and B. Plaintiffs argue, however, that the evidence establishes that the government is estopped from denying the benefits. They claim that the facts demonstrate affirmative misconduct on the federal defendant's part. Specifically, plaintiffs rely on the fact that the decedent received a certificate of insurance, that payroll deductions were made from her account and that she had no other insurance. Therefore, plaintiffs claim, these actions of the government constituted affirmative misconduct on which the decedent relied.

Relying on *Office of Personnel Management v. Richmond*, 496 U.S. 414, 432–34, 110 S.Ct. 2465, 2476, 110 L.Ed.2d 387, *reh'g denied*, 497 U.S. 1046, 111 S.Ct. 5, 111 L.Ed.2d 821 (1990), the federal defendant argues that "the Supreme Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds." Plaintiffs' situation, defendant contends, is precisely the kind of situation addressed in *Richmond*, where the Court determined that payments of money from the United States Treasury must be authorized by statute. *Richmond* involved a claim by a welder who had relied on erroneous advice from an executive agency official to his detriment. The Court found that common-law principles of equitable estoppel could not be used to compel the expenditure of public money not authorized by Congress; therefore, because the welder was not eligible for the benefits, he could not receive them. *Id.*, at 423–25, 110 S.Ct. at 2471. Similarly, because here the decedent was not eligible for the increased coverage, defendant argues, the government cannot be estopped from denying benefits not otherwise permitted by law. *Id.*

Plaintiffs argue that *Richmond* does not control the case at bar because there is no evidence to indicate that the funds to pay the decedent's Options A and B claims would come from the Treasury. The only funds reimbursed by the Treasury to MetLife, plaintiffs contend, are those premiums paid by Mala Chatterjee. In accordance with 5 U.S.C. §§ 8707 and 8708, monies to pay premiums come from deductions from an insured employee's pay and/or from Govern-

ment contributions. These funds are deposited into the Treasury to the credit of the Employees' Life Insurance Fund. 5 U.S.C. § 8714. Thus, as this Court determined in its August 20, 1992, Memorandum Order,

> the fact that the premiums were fully funded by the decedent does not bring this case outside the scope of *Richmond*'s holding that estoppel cannot be used against the government in a manner that results in payments not authorized by statute.

To receive the insurance coverage, then, Mala Chatterjee would have had to provide satisfactory proof of her eligibility first. Plaintiffs were not able to prove that this was done. Therefore, Mala Chatterjee was not entitled to the insurance coverage of Options A and B and the government is not estopped from denying her payments. *See Richmond,* 496 U.S. at 423–25, 110 S.Ct. at 2471 (payments from the Treasury must be authorized by statute); *JANA, Inc. v. United States,* 936 F.2d 1265, 1270 (Fed.Cir.1991) (*Richmond* held that "absent fraud by the government, estoppel could never be asserted against it in suits to compel the payment of money from the public treasury in contravention of eligibility requirements contained in an Act of Congress."), *cert. denied,* —— U.S. ——, 112 S.Ct. 869, 116 L.Ed.2d 775 (1992).

■ Even if the Court were to ignore the mandate of *Richmond*,[2] plaintiffs cannot demonstrate a claim for estoppel against the federal defendant. The party claiming the estoppel must have relied on its adversary's conduct " 'in such a manner as to change his position for the worse' " and that reliance must have been reasonable "in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler v. Community Health Services of Crawford,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984) (citation omitted). Plaintiffs have not alleged that any D.C. employee told the decedent, orally or in writing, that she did not need to submit evidence of insurability. Ms. Robinson's testimony indicated that there was no discussion between her and the decedent concerning the requirements for in-

surability. Payroll deductions were taken from the decedent's paycheck. However, this fact does not relieve Mala Chatterjee, as an established employee of the District of Columbia, from her independent responsibility to know the requirements of the FEGLI program. *Id.* at 63, 104 S.Ct. at 2225 ("those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law.").

■ Plaintiffs also argue that the OPM can waive its own regulations, relying on 5 C.F.R. §§ 871.103 and 872.103. These regulations state that OPM may order correction of any error, mistake or omission, "upon a showing satisfactory ... that it would be against equity and good conscience not to do so." As the federal defendant contends, though, these particular provisions do not authorize OPM to waive a substantive requirement of the FEGLI program. OPM is merely allowed to exercise its discretion to correct an error in the administration of the insurance program. Indeed, acting under this authority, OPM allowed the plaintiffs to submit post-death evidence of the decedent's insurability, which was denied. Therefore, these regulations do not authorize the OPM to waive altogether the requirement of FEGLI that satisfactory evidence of insurability be submitted.

Therefore, defendants are not estopped from denying plaintiffs' claim.

### III. *Conclusion*

In accordance with an Order filed herewith and for the reasons stated above, the Court denies plaintiffs' motions for judgment and for a new trial against defendants District of Columbia and MetLife and denies plaintiffs' motion for judgment against the federal defendant. The Court also grants the federal defendant's motion for judgment and the District of Columbia's and MetLife's motions for judgment.

---

2. Plaintiffs cite to cases in which the courts did not follow *Richmond.* However, as plaintiffs themselves note, these cases are dissimilar from the case at bar.

## ORDER

This matter comes before the Court upon each party's motion for judgment following a mistrial declared on March 25, 1993. Plaintiffs have also filed a motion for a new trial against the defendants District of Columbia and Metropolitan Life (MetLife) as well as a motion to strike these defendants' motions for judgment. In accordance with the Memorandum Opinion filed herewith, upon consideration of the parties' motions, the oppositions, the replies thereto and the entire record, it is this 8th day of June, 1993, hereby

ORDERED that plaintiffs' motion to strike the District of Columbia's and MetLife's motions for judgment is denied; and it is

ORDERED that plaintiffs' motions for judgment and for a new trial against defendants District of Columbia and MetLife are denied; and it is further

ORDERED that plaintiffs' motion for judgment against the federal defendant is denied; and it is also

ORDERED that federal defendant's motion for judgment and defendants District of Columbia's and MetLife's motions for judgment are granted.