Christine HUGHES, Plaintiff,

v.

Eleanor GOODWIN, et al., Defendants.

Civ. No. K–94–83.

United States District Court,
D. Maryland.

Aug. 17, 1994.

J. Charles Smith, III, and Smith & Smith, Mt. Airy, MD, for plaintiff.

Barbara J. Matthews–Beck, Washington, DC, and Lynne A. Battaglia, U.S. Atty., and Kay A. Allison, Asst. U.S. Atty., of Baltimore, MD, for defendants.

### MEMORANDUM AND ORDER

FRANK A. KAUFMAN, Senior District Judge.

(1) Reference is hereby made to the Motion to Dismiss or, in the Alternative, for

Summary Judgment, filed with this Court by defendants[1] in this case on April 23, 1994, and to all other filings in connection thereto. For the reasons set forth in this Memorandum & Order, that said Motion is hereby granted.

(2) The relevant facts in this case, except where noted to the contrary in this Memorandum & Order, are undisputed. Plaintiff, Christine Hughes, is the daughter of decedent Donna B. Hughes and is also the personal representative of decedent's estate.[2] Plaintiff asserts that defendants wrongly have refused to pay her approximately $23,000.00, the amount allegedly owed to decedent under the Federal Employees' Group Life Insurance ("FEGLI") program.

Decedent began employment with the National Institutes of Health ("NIH") on October 10, 1978. Shortly thereafter, on October 23, 1978, decedent waived all life insurance coverage. The form which decedent executed in that regard required the employee to mark an "X" in the applicable box. Decedent placed an "X" in Box C of that form, which stated, "Mark here for **NO INSURANCE AT ALL.**" Immediately adjacent to Box C, the following language was printed:

I DO *NOT* WANT *ANY* LIFE INSURANCE NOW. I understand that I cannot get any regular insurance, unless I: (1) wait at least one year after I sign this form, (2) am under age 50 when I apply, AND (3) give satisfactory medical evidence of insurability. I understand I cannot get the $10,000 optional insurance unless I first have the regular insurance.

Decedent signed and dated the form on October 23, 1978. The form was stamped as received by her employing agency, the NIH's Department of Health and Human Services, on November 1, 1978. NIH subsequently issued decedent a "SF 50"—Notice of Personnel Action—verifying that her life insurance had been waived as of November 1, 1978.

Decedent again waived life insurance coverage on March 2, 1981, signing and dating the appropriate form.[3] The waiver form was signed and certified by decedent's employing agency on March 9, 1981. Furthermore, the instructions contained upon the back of that form stated:

If you waive Basic Life or decline one or more of the options, your opportunities to cancel your waiver or enroll in an option you previously declined **are strictly limited.** See "Conditions for Changing Enrollment" in your SF 2817A or B.[4]

Over the next several years, NIH issued to decedent numerous personnel notices which indicated that her FEGLI waiver was still in effect.[5]

On September 4, 1987, decedent submitted to the OWCP a Claim for Compensation on Account of Traumatic Injury ("Form CA–7"). On the reverse of that form, decedent's supervisor appears erroneously to have indicated, on September 22, 1987, that decedent was enrolled in both health benefits and optional

---

1. Defendants, sued only in their official capacities, are Eleanor Goodwin, Deputy Assistant Director for Operations, Office of Retirement Programs of the United States Office of Personnel Management ("OPM"); and Lawrence W. Rogers, Director, Office of Workers' Compensations Programs ("OWCP"), Employment Standards Administration of the United States Department of Labor.

2. Plaintiff was appointed as personal representative of her mother's estate as of September 8, 1992.

3. That form stated "I want no insurance at all," and, in all other relevant respects, essentially mirrored the language of the earlier waiver, set forth *supra.*

4. The form or forms entitled "SF 2817A" and "B" apparently were not included in the record submitted to this Court but, presumably, include the same conditions listed upon the waivers, *supra.* In any event, their absence from the record does not influence this Court's conclusions in this Memorandum & Order.

5. Defendants have included in the record in the within case SF–50 notifications to that effect bearing the following dates: October 7, 1979; October 19, 1979; July 25, 1980; July 26, 1981; August 24, 1981; October 19, 1981; July 25, 1982; August 18, 1982; July 24, 1983; January 15, 1985; July 21, 1985; July 28, 1986; October 22, 1986; April 17, 1987; May 10, 1988; July 31, 1988; August 28, 1988; October 14, 1988; November 14, 1988; and January 6, 1989.

insurance.[6] On October 4, 1988, decedent filed with OPM an Application for Immediate Retirement due to disability. In that application, decedent indicated that she was not enrolled in the life insurance program. OPM approved decedent's application for disability retirement, and decedent retired on December 23, 1988. Subsequent to her retirement, OPM notified decedent at least twice, through a "SF 50" dated January 6, 1989, and by letter dated March 23, 1989, that she was not covered by life insurance. In that March 23, 1989, letter, OPM informed decedent that it would notify OWCP only to deduct payments for health benefits from her workers' compensation payments.[7]

Plaintiff claims that decedent, at an unidentified date early in 1990, orally inquired over the telephone of the OWCP "as to what amounts were being deducted from her check, and to make sure she had adequate amounts of life insurance." Apparently, the employee of the OWCP with whom decedent spoke confirmed that deductions for life insurance were being subtracted from her compensation payments. Premiums for life insurance seem to have been deducted from decedent's compensation payments from September 24, 1987 until August 22, 1992.[8]

(3) Shortly after decedent's death on August 21, 1992, plaintiff submitted a claim for life insurance disbursement to OPM. In response, OPM issued an initial decision on February 11, 1993, in which it denied coverage based upon decedent's numerous waivers in that regard. By letter dated March 1, 1993, plaintiff requested reconsideration of that initial determination, and, on June 25, 1993, OPM issued a final decision letter in which it affirmed its initial denial of insurance benefits. In the interim, on April 9, 1993, OWCP issued to plaintiff a check in the amount of $275.70, purportedly representing the amount of the premiums deducted from decedent's compensation payments for life insurance. That check was returned to OPM by plaintiff's attorney in a letter dated August 16, 1993. Plaintiff initiated this action before this Court on January 12, 1994.[9]

(4) The standard for granting summary judgment requires that the non-movant plaintiff "have all reasonable inferences ... drawn in h[er] favor." *Felty*, 818 F.2d at 1129. Summary judgment is appropriate if "there is no genuine issue of material fact and [if] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ (5) Before addressing the merits of this case, this Court first must determine whether or not plaintiff has standing to seek the benefit of decedent's claimed life insurance. *See Valley Forge Christian College v. Americans United for Sep. of Church & State*, 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982).

**6.** That supervisor also seemingly erroneously noted that deductions for both of those benefits were made through September 26, 1987. No party in this case proposes that assertion to be correct with regard to life insurance, as opposed to health coverage. Rather, plaintiff alleges, and defendants concede, that deductions for life insurance *began* on September 24, 1987.

**7.** Decedent, at the time of her retirement, elected to receive workers' compensation benefits in lieu of her civil service disability retirement annuity, with the understanding that that annuity was suspended with the possibility of resumption in the event that her workers' compensation payments expired or were reduced below certain levels.

**8.** The precise dates during which life insurance premiums were deducted are unclear. Plaintiff, in her Complaint, variously identifies the beginning date as September 22, 1987, or September 24, 1987. Defendants do not offer any alternative dates, although they admit at least some deductions were made. For the purposes of the consideration of defendants' said Motion in this Memorandum & Order, the exact dates are unimportant, and this Court will accept non-movant plaintiff's characterization of the general duration of the deductions. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

**9.** This Court possesses subject matter jurisdiction over the within case pursuant to 5 U.S.C. § 8715. That section provides:

The district courts of the United States have original jurisdiction, concurrent with the United States Claims Court, of a civil action or claim against the United States founded on this chapter.

No party in this case has challenged this Court's subject matter jurisdiction.

15 U.S.C. § 8705(a) lists the priorities to be given to potential claimants of decedent's life insurance benefits.[10] Defendants contend that Daniel Hughes, as the son of decedent, has priority over plaintiff, as personal representative of decedent's estate. Defendants, while not disputing that plaintiff also is the child of decedent, maintain that because plaintiff "filed" this action in her capacity as personal representative of decedent's estate and not as decedent's daughter,[11] she therefore should be barred from asserting that latter status as the basis for her claim. Defendants have provided no case authority to support such a hyper-technical distinction, and the apparent omission of any mention of the filial relationship between plaintiff and decedent in plaintiff's Complaint seems too minor to justify such a stance.

In any event, this Court concludes that plaintiff as personal representative has precedence to pursue decedent's life insurance benefits, if any, as a result of decedent's son's failure to file a claim for the same within one year of decedent's demise. Subsection 8705(b) provides:

> If, within 1 year after the death of the employee, no claim for payment has been filed by a person entitled under the order of precedence named by subsection (a) of this section, ... payment may be made in the order of precedence as if the person had predeceased the employee, and the payment bars recovery by any other person.

Thus, even if decedent's son otherwise would have precedence over plaintiff with regard to this claim, his failure timely to file the same allows plaintiff to bring this action. This Court concludes that plaintiff, as daughter of decedent and as personal representative of decedent's estate, does possess standing to pursue this case.

■ (6) However, turning to the merits of plaintiff's claim, this Court concludes that plaintiff is not entitled to the relief which she seeks. Employee participation in the FEG-LI program is voluntary.

> An employee is automatically insured on the date he becomes eligible for insurance and each policy of insurance purchased by [OPM] under this chapter shall provide for that automatic coverage.

5 U.S.C. § 8702(a). In order to withdraw from the program, an employee affirmatively must waive coverage.

> An employee desiring not to be insured shall give written notice to his employing office on a form prescribed by [OPM]. If the notice is received before he has become insured, he shall not be insured. If the notice is received after he has become insured, his insurance stops at the end of the pay period in which the notice is received.

5 U.S.C. § 8702(b).

In this case, plaintiff admits that decedent signed several written waivers during the period of her employment with NIH. Decedent commenced her employment with that agency on October 10, 1978, submitted her claim for workers' compensation on September 4, 1987, and retired on December 23, 1988.

Under the terms of the statute governing the continuation of life insurance coverage for retired federal employees or for those employees receiving workers' compensation for injury or disability, an employee, to con-

---

**10.** That section delineates the following order of precedence:

> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or ... in the Office of Personnel Management....
>
> Second, if there is no designated beneficiary, to the widow or widower of the employee.
>
> Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.
>
> Fourth, if none of the above, to the parents of the employee or the survivor of them.

> Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.
>
> Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.

**11.** Apparently, the basis for that characterization by defendants is the description of plaintiff in her Complaint solely as the personal representative of decedent's estate. No mention is made in the Complaint of plaintiff's familial relationship to decedent.

tinue coverage past the period of active employment, must have

been insured under [FEGLI] throughout—

(A) the 5 years of service immediately preceding the date of the employee's retirement, or

(B) the full period or periods of service during which the employee was entitled to be insured, if fewer than 5 years.

5 U.S.C. § 8706(b)(1) and (b)(2); *see also* 5 C.F.R. §§ 870.601(a) and 870.701(a).[12]

Therefore, in order to have been eligible for life insurance coverage past the date of decedent's retirement, the controlling statutory and regulatory provisions require that decedent must have been insured for at least five years prior to either the date of her entitlement to workers' compensation benefits or her retirement, which she admittedly was not. According to plaintiff's own contentions, any claimed life insurance coverage could not have begun until deductions commenced on or about September 22, 1987, which also was the date upon which decedent's supervisor erroneously completed decedent's Form CA-7.

"It is axiomatic 'that words used in a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary.'" *Chrobak v. Metro. Life Ins. Co.*, 517 F.2d 883, 886 (7th Cir.1975) (quoting *Burns v. Alcala*, 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–85, 43 L.Ed.2d 469 (1975)). Plaintiff in this case has provided no persuasive reason for this Court to disregard the five-year requirement of subsection 8706(b). Accordingly, by the terms of that statute and its interpretive regulations, decedent was not eligible for life insurance benefits.

(7) Even if decedent did satisfy the requirements of subsection 8706(b) and its accompanying regulations, granting plaintiff the benefit of all reasonable inferences in her favor, plaintiff still has not demonstrated "by a preponderance of the evidence [decedent's] entitlement to the retirement benefit [plaintiff] seeks." *True v. OPM*, 926 F.2d 1151, 1153 (Fed.Cir.1991).

Plaintiff relies upon three factors to support her claim that decedent was entitled to life insurance coverage—the allegedly erroneous September 22, 1987, certification by decedent's supervisor, on decedent's Form CA-7, that decedent possessed life insurance coverage [13]; the deductions of life insurance premiums from decedent's workers' compensation payments, beginning in September 1987; and the alleged 1990 telephone conversation between decedent and an OWCP employee during which that employee purportedly confirmed that life insurance premium payments were being deducted from her compensation checks. However, in the light of the facts present in this case, none of those factors suffices to demonstrate coverage of decedent.

In order to claim coverage of decedent, plaintiff must show an "affirmative act by decedent suggesting that she desired the insurance coverage," *McDade v. Hampton*, 469 F.2d 142, 144 (D.C.Cir.1972), and must demonstrate that decedent would "have qualified for the ... insurance coverage she sought." *See Chanda v. OPM*, 841 F.Supp. 432, 436 (D.D.C.1993), *aff'd*, 1993 WL 525715, 1993 U.S.App. LEXIS 37,058 (D.C.Cir. Dec. 8, 1993), and *aff'd*, 1994 WL 36311, 1994 U.S.App. LEXIS 9959 (D.C.Cir. Jan. 31,

---

**12.** 5 C.F.R. § 870.701 deals specifically with an employee who leaves active service in order to receive workers' compensation payments. For such an employee,

basic life insurance shall be continued or reinstated if he/she:
(a) Has been insured for the five years of service immediately preceding the date of entitlement to compensation, or for the full period(s) of service during which he/she was entitled to be insured[.]
5 C.F.R. § 870.701(a).

**13.** This Court notes that it is unclear whether that supervisor in fact was referring to life insurance benefits when he checked the box indicating decedent had "Optional Insurance." That language appears in the same section of the form as a question regarding "Health Benefits." It seems possible to this Court that decedent's supervisor, in completing that section, was addressing decedent's health coverage, not her life insurance. That surmise may explain the notation by the supervisor that "Deductions" were made *through* September 26, 1987. *See* note 6, *supra*. In any event, for purposes of this Memorandum & Order, this Court accepts plaintiff's characterization of the form. *See, e.g., Felty*, 818 F.2d at 1129.

1994). Plaintiff's sole evidence of an affirmative act on the part of decedent is her alleged telephone conversation with an OWCP employee, as a result of which decedent purportedly "assumed" that she had life insurance coverage. In contrast to that single, oral, and undocumented action, decedent signed several waivers of coverage and received at least twenty notifications from OPM that she lacked life insurance. *See United States v. Vanhorn,* 20 F.3d 104, 112 n. 19 (4th Cir.1994) (stating that "[o]ral representations by Government officers cannot result in a modification of a statutory contract; such modifications, to be valid, must be in writing").

The waivers were clear and unambiguous,[14] and the criteria necessary in the event decedent later chose coverage were straitforwardly delineated. Among those criteria were requirements that decedent be under the age of fifty in order to apply for coverage and that decedent provide "satisfactory medical evidence of insurability." According to plaintiff's own representations, deductions and, therefore, coverage did not begin until September 1987; consequently, decedent at that time already had passed the maximum age requirement.[15] Additionally, plaintiff has offered no evidence that decedent ever provided the requisite medical evidence of insurability. *See Chanda,* 841 F.Supp. at 435–36.

The erroneous certification by decedent's supervisor on her Form CA–7 and the consequent premium deductions and conversation with an OWCP employee cannot suffice in the face of the above-delineated facts. In *McDade,* premiums had been deducted from the pay checks of the decedent for whom coverage was claimed in that case, and, after the death of decedent, a letter was sent from one of her supervisors mistakenly indicating that decedent had possessed life insurance. Nonetheless, that court stated:

> In light of the clear and unmistakable language of the waiver form [decedent] marked and signed, neither this letter nor her failure to object to the payroll deductions are sufficient to overcome the inference that the execution of the waiver was a knowing and voluntary act.

*McDade,* 469 F.2d at 144.

> [I]n situations of this sort the payment procedure on a group policy and the wheels of government in connection therewith move ponderously and are not geared to the individual developments departing from the expected norm, which individual developments must, as here, be the subject of subsequent individual adjustment. The coverage of the policy cannot be expanded by the erroneous payment of premium, nor can it be by the routine issuance of any notice pertaining to the policy issued without cognizance of the fact of death. The effective coverage only applied to those persons who had met the conditions for coverage.

*Chrobak,* 517 F.2d at 887.

In this case, "[i]t is uncontested that money necessary to pay the premiums ... was deducted from [decedent's] paycheck," but "the payroll deductions were the result of the erroneous certification by [an OPM employee], not the result of a determination that the decedent was eligible for ... coverage." *Chanda,* 841 F.Supp. at 436.

■ (8) Finally, this Court concludes that plaintiff cannot estop defendants from denying decedent coverage in this case. Plaintiff claims that decedent affirmatively relied upon defendants' alleged errors and the deductions of premiums and, consequently, chose not to pursue private insurance coverage.

In evaluating an estoppel claim against the federal government, this Court starts with the proposition that "a government agency is not estopped merely because its actions, if taken by a private party, would have worked an estoppel." *West Augusta Dev. Corp. v. Giuffrida,* 717 F.2d 139, 141 (4th Cir.1983). "The government's acts or misrepresentations inducing reliance must be 'affirmative misconduct,' must be more than a mistake by

---

**14.** *See supra* for language of two waivers signed by decedent.

**15.** Decedent was born on January 26, 1937; thus, her fiftieth birthday was January 26, 1987, approximately nine months before any deductions were made.

an individual government employee." *Furcron v. United States,* 626 F.Supp. 320, 323 (D.Md.1986) (Young, J.). "The Government is simply not bound by the negligent, unauthorized acts of its agents ... and estoppel against the Government cannot be premised on oral representations." *Vanhorn,* 20 F.3d at 112–13 n. 19. Furthermore, in order successfully to assert estoppel, plaintiff must "demonstrate that [decedent was] irrevocably harmed by the government's conduct." *Furcron,* 626 F.Supp. at 324.

Chief Judge Ervin, in analyzing the Supreme Court's estoppel jurisprudence, has written that that Court's decisions "restrict[ing] the application of estoppel against the Government," *United States v. Cox,* 964 F.2d 1431, 1435 (4th Cir.1992),

> all involve a purely private litigant seeking to preserve a financial gain by estopping the Government from enforcing the prevailing law. In those situations, the [Supreme] Court has held that the Government's interest in preserving a uniform rule of law outweighs any equitable rights the private litigant could assert by pleading estoppel.

*Id.* (citations omitted).

In this case, defendants' erroneous actions seem more appropriately described as simple mistakes, rather than "affirmative misconduct." The government repeatedly notified decedent, as late as March 23, 1989,[16] that she lacked life insurance coverage, and the waiver forms which defendants provided and which decedent marked and signed were clear in their language delineating the requirements for resumption of coverage. Decedent unequivocally waived that coverage upon several occasions, indicating as late as October 4, 1988, on her application for retirement, that she knew she did not possess life insurance. Furthermore, to allow plaintiff to prevail in this case despite the statutory bar to coverage would "upset public policy," *Furcron,* 626 F.Supp. at 324, and transgress "a

uniform rule of law," *Cox,* 964 F.2d at 1435, as enacted by Congress and entrusted to government agencies such as OPM and OWCP.

(9) For the foregoing reasons, this Court, by separate Order of even date herewith, hereby GRANTS summary judgment in favor of defendants.[17]

(10) Copies of this Memorandum and Order are today being mailed to counsel of record.

(11) It is so ORDERED this 17th day of August, 1994.

---

**16.** *See* note 5, *supra,* for the dates of other notifications which were included in the record in this case.

**17.** This Court notes that defendants apparently attempted unsuccessfully to return to decedent a check which purportedly represented the wrong-

ly deducted premium payments. While that matter is not before this Court, and this Court therefore expresses no views in that regard, it may be that plaintiff is entitled to a return of the full amounts incorrectly deducted from decedent's compensation payments.