FUNERAL FINANCIAL SYSTEMS, LTD., Plaintiff-Appellant, v. METRO-POLITAN LIFE INSURANCE COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—99—1984

Opinion filed June 29, 2001.

Harry C. Lee, of Law Office of Harry C. Lee, of Chicago, for appellant.

Catherine A. Van Horn, of Davidson Mandell & Menkes, of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of the assignment of proceeds payable under a federal employees' group life insurance policy issued by defendant Metropolitan Life Insurance Company (MetLife) to the United States Office of Personnel Management (OPM) pursuant to the Federal Employees' Group Life Insurance Act (FEGLIA) (5 U.S.C. § 8701 *et seq.* (1994)). Plaintiff Funeral Financial Systems, Ltd. (FFS), an assignee finance company, brought the underlying action against MetLife seeking damages under the theories of apparent agency and promissory estoppel, based upon an OPM employee's alleged promise to FFS regarding certain proceeds of the policy. The trial court entered summary judgment in favor of MetLife. FFS now appeals. At issue is whether FFS' state-law estoppel claim is preempted by FEGLIA.

## I. STATEMENT OF FACTS

Plaintiff FFS is an Illinois corporation whose business includes advancing funds to funeral directors to defray funeral, burial, and other associated expenses for a deceased, and advancing immediate funds to the beneficiaries of a deceased's life insurance benefits. The beneficiaries assign their interest in the deceased's life insurance benefits to the funeral home, which then assigns the benefits to FFS. FFS then pays some or all of the funeral and other expenses.

Defendant MetLife is a mutual life insurance company registered with the Illinois Department of Insurance and licensed to do business in Illinois. MetLife issued a federal employees' group life insurance policy, group policy No. 17000—G (the FEGLI Policy), to the United States Office of Personnel Management, pursuant to the FEGLIA (5 U.S.C. §§ 8701 through 8716 (1994)).[1] The office of federal employees' group life insurance (the FEGLI Office) is the administrative unit of MetLife that is responsible for administering all. claim processing under the FEGLI Policy.

---

[1]Congress enacted FEGLIA in 1954 "to provide low-cost group life insurance to Federal employees." H.R. Rep. No. 2579 at 1 (1954), *reprinted in* 1954 U.S.C.C.A.N. 3052. Under FEGLIA, insurance benefits are provided under master policy issued by Metlife to OPM. See 5 U.S.C. § 8709 (1994) (authorizing OPM to purchase group policy from private life insurance companies). OPM administers FEGLIA and has the authority to "prescribe regulations necessary to carry out FEGLIA's purposes." 5 U.S.C. § 8716 (1994).

Andrew G. Ortega (the Insured) was insured under the FEGLI Policy. Prior to his death on April 7, 1996, the Insured completed a valid designation of beneficiary form that designated three individuals to receive equal shares of the proceeds of his insurance coverage under the FEGLI Policy. Andrew R. Ortega was one of the three individuals designated as beneficiary by the Insured.

On April 17, 1996, the FEGLI Office received an irrevocable assignment and reassignment signed by Andrew R. Ortega. This assignment/reassignment assigned Andrew R. Ortega's rights to the proceeds of Insured's policy to Palm Heights Funeral Home, which then immediately reassigned those rights to FFS. The total benefits payable under the Insured's policy amounted to $3,200. On or about July 18, 1996, the FEGLI Office paid $1,083.33 to FFS. The remaining two-thirds balance of the proceeds was paid to the two other beneficiaries in equal shares.

On January 12, 1998, FFS filed a complaint for promissory estoppel against MetLife in which it sought damages in the amount of $2,116.67 plus costs, interest, and attorney fees. FFS' complaint alleged that, on April 8, 1996, one of FFS' representatives spoke with Beverly Taylor, an OPM employee, to verify information about the Insured's life insurance benefits in order to determine whether FFS should advance $5,135 to Palm Heights Funeral Home. According to FFS, Ms. Taylor informed its representative that although there were not enough proceeds to cover an assignment in the amount of $5,135, there were enough proceeds to cover an assignment in the amount of $3,200 and that she would mark OPM's records and MetLife would recognize the assignment. FFS further alleged that, on April 9, 1996, Ms. Taylor contacted FFS and advised that Andrew R. Ortega was the beneficiary of the Insured's policy. FFS next alleged that, on April 10, 1996, in reliance on Ms. Taylor's statements, it authorized Palm Heights Funeral Home to write a draft on FFS' account in the amount of $3,200 less applicable fees and costs. On or around July 22, 1996, the FEGLI Office issued a check to FFS for $1,083.33. FFS alleged that it made repeated demands of MetLife to pay the remaining $2,116.67, allegedly due FSS, which MetLife refused.

MetLife filed a motion for summary judgment, arguing that: (1) FFS's state-court promissory estoppel claim was preempted by FEGLIA, and (2) it was prohibited by federal law from paying out any more money than allowed by FEGLIA and the FEGLI Policy.

The trial court granted summary judgment to MetLife. The court's order stated that it was granting summary judgment "for reasons based upon those arguments raised by MetLife in its motion and corresponding memorandum in support and reply brief."

FFS now appeals.

## II. DISCUSSION

●1 Article VI of the Constitution, the supremacy clause, provides that the laws of the United States "shall be the supreme Law of the Land; *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Since the Supreme Court's decision in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427, 4 L. Ed. 579, 606-07 (1819), it has been well settled that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 726, 746, 68 L. Ed. 2d 576, 595, 101 S. Ct. 2114, 2128-29 (1981).

●2 Preemption of state law occurs in three different ways. First, the federal law at issue may itself express a congressional intent to preempt state law. Congress' intent may be " 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.' " *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422-23, 112 S. Ct. 2608, 2617 (1992), quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 51 L. Ed. 2d 604, 614, 97 S. Ct. 1305, 1309 (1977). Second, absent an express congressional command, preemption may be inferred if there is a direct conflict between the terms of the federal and state law. See *Cipollone*, 505 U.S. at 516, 120 L. Ed. 2d at 423, 112 S. Ct. at 2617. And third, we can find preemption if there exists a pervasive regulatory scheme that "so thoroughly occupies a legislative field ' "as to make reasonable the inference that Congress left no room for the States to supplement it." ' [Citations.]" *Cipollone*, 505 U.S. at 516, 120 L. Ed. 2d at 423, 112 S. Ct. at 2617.

●3 In all cases where preemption is at issue, the question of preemption turns on congressional intent. Thus, we necessarily begin our analysis with the language of the statute itself. See *Metropolitan Life Insurance Co. v. Christ*, 979 F.2d 575, 578 (7th Cir. 1992). In 1980, Congress amended FEGLIA for the express purpose of endowing the FEGLI Policy's provisions with preemptive effect over any inconsistent state law. This amendment, codified at 5 U.S.C. § 8709(d)(1), provides, in pertinent part, as follows:

. "The provisions of [the FEGLI] contract *** which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supercede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the [FEGLI Policy] contractual provisions." 5 U.S.C. § 8709(d)(1) (1994).

Thus, our preemption inquiry begins with consideration of whether FFS' promissory estoppel claim against MetLife: (1) is based on a

state law or regulation issued thereunder; (2) relates to group life insurance; and (3) is inconsistent with the provisions of the policy of insurances issued by MetLife to OPM.

•4 First, FFS argues that it is "at least doubtful" whether Congress intended the preemptive provisions of section 8709(d)(1) of FEGLIA to apply to promissory estoppel claims because Congress added the language "or any regulation issued thereunder" to the phrase "state law." FFS asserts that this language limits the term "state law" to mean only state statutory law. We reject this argument. As noted by MetLife, at least since 1938, the United States has interpreted the phrase "state law" to include a state's common law, as well as its statutes and regulations. See *Cipollone*, 505 U.S. at 522, 120 L. Ed. 2d at 426, 112 S. Ct. at 2620 ("[a]t least since *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), we have recognized the phrase 'state law' to include common law as well as statutes and regulations").

•5 Next, FFS argues that FEGLIA's preemption provision does not apply to its promissory estoppel claim because the claim does not relate to group life insurance. We disagree. The Seventh Circuit addressed the "relates to" language in a claim under the FEGLI policy in *Metropolitan Life Insurance Co. v. Christ*, 979 F.2d 575, 579 (7th Cir. 1992). In holding that the plaintiff's state-law claim for payment under the provisions of a divorce decree were preempted by FEGLIA, which required payment to other persons, the Seventh Circuit stated:

> "This clause broadly preempts any state law that is inconsistent with the FEGLIA master policy. The ordinary meaning of the term 'relates to' is broad: ' "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." ' [Citation.] Moreover, a state law need not specifically address the subject of the federal law to relate to that subject: ' "[A] state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." ' [Citation.]" *Christ*, 979 F.2d at 579.

Here, FFS' promissory estoppel claim seeks the payment of insurance proceeds under the FEGLI Policy that were previously paid to other beneficiaries pursuant to the terms of the policy and FEGLIA. As such, it undoubtedly concerns the FEGLI Policy.

•6 Finally, FFS asserts that its claim is not within the preemptive grasp of section 8709(d)(1) of FEGLIA because it is not "inconsistent with" the FEGLI Policy. FFS argues that its claim is not a claim for proceeds under the FEGLI Policy and does not depend on the FEGLI Policy for payment. We disagree. FFS' only entitlement to proceeds arises from the FEGLI Policy and the assignment to FFS by one of the

three beneficiaries. Under the FEGLI Policy and FEGLIA, FFS is not entitled to the unassigned two-thirds of the proceeds. Thus, FFS' claim conflicts with the FEGLI Policy.

•7 Accordingly, we find that FFS' claim for promissory estoppel is preempted pursuant to section 8709(d)(1) of FEGLIA.

Preemption aside, there is a second basis upon which to find that FFS' claim must fail. As noted by MetLife, the entire amount of proceeds payable under the Insured's FEGLI Policy has already been paid (collectively to FFS and the other two beneficiaries); thus, any additional payment to FFS would be in excess of the contractually and statutorily authorized benefit amount. Such a payment is prohibited by FEGLIA and, in addition, would constitute an unauthorized withdrawal from the United States Treasury.

To demonstrate that any additional sums paid to FFS would come from the United States Treasury, MetLife submitted the affidavit of Ellen Tunstall, the United States government employee responsible for the administration of the FEGLI program. She stated:

"Pursuant to OPM's interpretation of FEGLIA, any payment by MetLife, OFEGLI, or OPM, above and beyond the amount of the insured's coverage under the FEGLI Policy would represent an unauthorized withdrawal from the United States Treasury and the Fund. Any payment by Met-Life, OFEGLI, or OPM to Andrew R. Ortega, or his assigns [*i.e.*, the plaintiff] of benefits beyond the benefits designated by the Insured (in this case one-third of the life insurance proceeds) would represent an unauthorized withdrawal from the United States Treasury and the Fund."

Moreover, section 25 of the FEGLI Policy expressly limits the relief available in any action at law or in equity by a beneficiary or claimant to the amount of insurance in force plus any applicable interest or attorney fees. This defeats FFS' argument that it is entitled to damages measured by the amount expended by it in reliance on the promise or representations of MetLife as "an additional and separate obligation on MetLife."

In further support of its argument that FFS cannot maintain a promissory estoppel claim, MetLife directs us to *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 L. Ed. 2d 387, 110 S. Ct. 2465 (1990), and *Chanda v. United States Office of Personnel Management*, 841 F. Supp. 432 (D.D.C. 1993), *aff'd*, No. 93—5249 (D.C.C. 1993), aff'd, No. 93—5249 (D.C.C. 1994).

In *Richmond*, the respondent had received incorrect advice from his employing agency regarding the amount of disability annuity payment that was due him under the provisions of 5 U.S.C. § 8337(a). The federal circuit court of appeals held that the erroneous advice consti-

tuted "affirmative misconduct" that estopped the government from reducing the respondent's annuity to the "correct" amount. Reversing the federal circuit's decision, the United States Supreme Court concluded that no judicial remedy was legally available because estoppel could never be asserted against the government to require payment of Treasury funds contrary to statute. See *Richmond*, 496 U.S. at 434, 110 L. Ed. 2d at 405, 110 S. Ct. at 2476. Relying on the appropriations clause, the Court stated:

> "Respondent points to no authority in precedent or history for the type of claim he advances today. Whether there are any extreme circumstances that might support estoppel in a case not involving payment from the Treasury is a matter we need not address. As for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds. In this context there can be no estoppel, for courts cannot estop the Constitution. The judgment of the Court of Appeals is reversed." *Richmond*, 496 U.S. at 434, 110 L. Ed. 2d at 405, 110 S. Ct. at 2476.

Indeed, this case is similar to *Richmond* because FFS is asserting that a government employee (*i.e.*, Beverly Taylor of OPM) erroneously told FFS that enough funds existed to cover a $3,200 assignment. FFS' claim must fail because "there can be no estoppel, for the courts cannot estop the Constitution." *Richmond*, 496 U.S. at 434, 110 L. Ed. 2d at 405, 110 S. Ct. at 2476.

Further, in *Chanda*, the insured had attempted to elect FEGLIA option B coverage under circumstances in which FEGLIA and OPM's regulations required that the insured provide satisfactory medical proof of insurability. See *Chanda*, 841 F. Supp. at 437-38. The government employee who reviewed the insured's election form assumed incorrectly that such proof was not necessary and mistakenly certified that the insured was eligible for option B coverage. See *Chanda*, 841 F. Supp. at 437-38. Subsequently, deductions were taken from the insured's salary to pay for option B coverage. See *Chanda*, 841 F. Supp. at 437-38. Nevertheless, OPM subsequently denied the insured's option B coverage. See *Chanda*, 841 F. Supp. at 437-38. The insured argued that the defendants, OPM and Met-Life, were estopped from denying option B benefits because of the government's affirmative misconduct, relying on the fact that the insured had received a certificate of insurance and that deductions for the option B coverage had been taken from her salary. See *Chanda*, 841 F. Supp. at 437-38. Nevertheless, the district court, following *Richmond*, held that the insured could not assert estoppel to compel either OPM, the insured's employer, or MetLife to pay option B benefits from the United States Treasury in violation of FEGLIA. See *Chanda*, 841 F. Supp. at 437-38.

Thus, based on the above, we agree that FFS cannot maintain its estoppel claim. In addition, we also agree that in a FEGLI case, it is irrelevant whether the party sought to be estopped is a governmental entity, because the courts do not have the authority to estop a constitutional requirement that no government funds may be expended without congressional appropriation.

## III. CONCLUSION

Accordingly, we hold that FFS' promissory estoppel claim is preempted by federal law and hereby affirm the trial court's order which granted summary judgment to MetLife.

Affirmed.

O'BRIEN and GALLAGHER, JJ., concur.