154 F.3d 181
 Romona GROOMS; Robin Crewe; Rhonda Grooms; Roshaun
Grooms; Terrance Grooms, a minor, by his guardian
and next friend Robin Crewe; Irving
Grooms, Plaintiffs-Appellants,
v.
OFFICE OF PERSONNEL MANAGEMENT; Metropolitan Life Insurance
Company, Defendants-Appellees.
 No. 96-2392.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 4, 1998.
Decided Sept. 8, 1998.
 
 ARGUED: John Blanton Farmer, Thompson & McMullan, P.C., Richmond, Virginia, for Appellants. Debra J. Prillaman, Assistant United States Attorney, United States Attorney's Office, Richmond, Virginia; Sherry Susan Laird, Law Department, Metropolitan Life Insurance Company, New York, New York, for Appellees. ON BRIEF: Alton A. Martin, Thompson & McMullan, P.C., Richmond, Virginia, for Appellants. Helen F. Fahey, United States Attorney, United States Attorney's Office, Richmond, Virginia; Alvin Pasternak, Associate General Counsel, Law Department, Metropolitan Life Insurance Company, New York, New York, for Appellees.
 Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.
 Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILLIAMS and Judge DIANA GRIBBON MOTZ joined.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 We are presented with the question of whether the use by the Office of Personnel Management (the "OPM") of Standard Form 2817 to allow federal employees to elect or decline life insurance coverage violated the statutory or regulatory requirements of the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. § 8701 et seq. While we believe that the effect of the form's use could have been more clearly presented by the OPM, we conclude that the form does not violate FEGLIA and that it is effective in recording a federal employee's waiver of optional coverage. Accordingly, we affirm the district court's ruling that the federal employee in this case waived her optional life insurance coverage through her execution of Standard Form 2817 in March 1993.
 
 
 2
 * From 1983 to 1993, Ruth Mae Grooms was an employee of the United States Postal Service. Upon commencement of her employment, she elected four different offerings of life insurance made available under FEGLIA by executing Standard Form ("SF") 2817. First, she elected "basic coverage," which provided coverage in the amount of her salary, rounded to the next $1,000, plus an additional amount based on her age at death; second, she elected "standard optional coverage" which offered a flat payoff of $10,000; third, she elected "additional optional coverage" in the amount equal to four times her salary; and finally, she elected "family optional insurance," which offered fixed payments on the death of specified family members.
 
 
 3
 On March 6, 1993, when Grooms was suffering from a serious bout with cervical cancer, she successfully applied for workers' compensation benefits and retired from work on disability. In connection with her change in employment status, she elected to execute a second SF 2817 and also a SF 2818 ("Continuation of Life Insurance Coverage"). On filling out the SF 2817, however, Grooms signed only for "basic coverage" and left blank the places in the form where she could have elected the other insurance options. Under the terms of the forms, this effected a waiver of these other options.
 
 
 4
 The relevant portions and instructions of the SF 2817 that Grooms signed in 1993 state:
 
 
 5
 General Instructions .... If you are changing your election, see the back of Part 3--Employee Copy. To complete this form: *Read the back of Part 3--Employee Copy carefully....
 
 Then, it states:
 
 6
 To elect Basic Life, sign and date below. If you do not elect Basic Life, you may not elect any form of optional insurance. If you do not want any insurance at all, skip to section 5.
 
 It then states:
 
 7
 I want the Basic Life Insurance. I authorize deductions to pay my share of the cost.
 
 
 8
 There then follows a signature line, on which Ruth Grooms signed. The form then continues:
 
 
 9
 If you have elected Basic Life, you may elect any or all of the following options. Sign the box below for any option(s) you want. (You will not have coverage for any option[s] for which you do not sign.)
 
 
 10
 There are then three boxes below, one for standard optional insurance, one for additional optional insurance, and one for family optional insurance. Each box is followed by a signature line to elect the offered coverage. Grooms did not sign on any of these lines. Finally, beneath these boxes, there is a signature line to waive life insurance altogether. Again, Grooms did not sign on this line.
 
 
 11
 The back of Part 3--Employee Copy includes the following language:
 
 
 12
 * Be sure you sign for all options that you want. This election will supersede all previous elections. If you have had an option and wish to keep it, you must reelect it by signing the appropriate box.
 
 
 13
 PLEASE BE AWARE THAT YOU ARE SOLELY RESPONSIBLE FOR ENSURING THAT YOUR SF 2817 IS CORRECT--i.e., THAT THE ELECTIONS MADE ACCURATELY REFLECT YOUR INTENTIONS.
 
 
 14
 Waiving or Changing Your Insurance Coverage If you waive Basic Life or decline one or more of the options, your opportunities to cancel your waiver or enroll in an option you previously declined are strictly limited.
 
 
 15
 ...
 
 
 16
 Around the time that Grooms filled out SF 2817, she also filled out an SF 2818 ("Continuation of Life Insurance Coverage"), which states, in relevant part:
 
 
 17
 If you continue Basic Life Insurance coverage as a retiree or compensationer, your present optional life insurance elections will be automatically extended unless (1) you complete an SF 2817, declining those options.... You will pay the full cost of optional insurance (through deductions in your annuity or compensation) until age 65.
 
 
 18
 ...
 
 CONTINUATION OF OPTIONAL COVERAGE
 If You Are Retiring
 Option A--Standard
 
 19
 Your Option A--Standard life insurance ... will automatically be continued after you retire if ... you continue your Basic Life coverage ... and ... you do not decline coverage....
 
 Option B--Additional
 
 20
 Your Option B--Additional life insurance ... will automatically be continued into retirement if ... you continue your Basic Life ... and ... you do not decline coverage....
 
 If You Are Receiving Workers' Compensation
 
 21
 The Requirements for continuing any optional insurance you may have are the same as those for retiring employees....
 
 
 22
 Thus, when she executed the second SF 2817 in March 1993, Grooms elected only basic coverage and, under the terms of the SF 2817, declined the other optional coverages available to her. Despite her election, however, the Postal Service continued to withhold premiums for the other optional coverages from her benefits checks until her death.
 
 
 23
 On April 14, 1995, two years after executing the forms, Grooms died, and the OPM's contracting insurance company, Metropolitan Life Insurance Company, paid $33,000 to Grooms' beneficiaries. This was the amount to which Grooms' beneficiaries were entitled under basic coverage. The beneficiaries complained, however, that they were also entitled to $146,000 under the standard optional and additional optional coverages because, they argue, despite Grooms' execution of the March 1993 SF 2817, Grooms intended to continue all coverages. When the OPM rejected their claim, the beneficiaries filed this action.
 
 
 24
 Grooms' beneficiaries have produced several pieces of evidence that they claim indicate that Grooms did not intend to cancel her optional coverages on retirement. First, they point out that in 1992 Grooms was diagnosed with active cervical cancer from which she did not believe she would recover. Second, they point out that the OPM sent Grooms various forms on March 16, 1993, indicating that Grooms continued to retain optional coverages, and, they claim, the OPM did not send Grooms an acknowledgment which indicated that she had canceled her optional coverages. Third, the Postal Service continued to deduct premiums for the optional coverages from her benefits checks up to her death. Fourth, Grooms told various persons that she had optional life insurance of more than four times her salary. Fifth, Grooms spoke with a government employee named "Charmaine" shortly before her death, who told Grooms that she retained her optional coverages. And sixth, Grooms bequeathed more than $135,000 in her will because, according to one witness, Grooms thought she had that much in life insurance coverage.
 
 
 25
 The district court dismissed the beneficiaries' claims on summary judgment, ruling that SF 2817 was "clear and unambiguous" and not contrary to FEGLIA's requirements and that Grooms' completion of the form constituted an effective cancellation of her optional coverages. The court therefore refused to consider the extrinsic evidence of Grooms' intent. The court also held that the conduct of government employees and the government's erroneous deductions for premiums could not operate to estop the government or overcome Grooms' waiver.
 
 
 26
 The beneficiaries appealed, initially arguing both that Grooms' SF 2817 was invalid and that their recovery under basic life should include the last cost of living adjustment. Because the beneficiaries abandoned their second argument during appeal, the sole issue remaining is whether SF 2817 is valid under FEGLIA.
 
 II
 
 27
 The beneficiaries contend that SF 2817 does not meet the requirements of FEGLIA. They argue that FEGLIA requires that insureds affirmatively indicate their intention to cancel optional life insurance coverage and that SF 2817 fails to provide for an affirmative cancellation. They therefore urge that we take notice of the extrinsic evidence of Grooms' intent and, evaluating it under state law, hold that Grooms failed effectively to cancel her optional insurance.
 
 
 28
 Under FEGLIA, all eligible employees are automatically covered by basic life insurance unless they opt out of coverage. See 5 U.S.C. § 8702(a). "An employee desiring not to be insured shall give written notice to his employing office on a form prescribed by the Office.... If the notice is received after he has become insured, his insurance stops at the end of the pay period in which the notice is received." 5 U.S.C. § 8702(b). Standard optional life insurance and additional optional life insurance are made available to employees who have basic life insurance under such conditions as "the Office shall prescribe," 5 U.S.C. §§ 8714a(b), 8714b(b), and are available even to employees who retire on disability compensation, see 5 U.S.C. §§ 8714a(c)(2)(B), 8714b(c)(2). According to the 1993 regulations on the cancellation of optional life insurance by compensationers, a compensationer may cancel her optional insurance "at any time by filing a declination." 5 C.F.R. §§ 871.204(a), 872.204(a) (1993).
 
 
 29
 Thus, the OPM's decision to use a particular form to allow employees to decline optional coverage is a discretionary one so long as the form selected satisfies the stated requirements of being a "written notice," see 5 U.S.C. § 8702(b), and a "declination," see 5 C.F.R. §§ 871.204(a), 872.204(a) (1993). SF 2817 satisfies these minimal requirements because it is a written notice which can, according to its language, only be construed as being a declination.
 
 
 30
 We reach this conclusion for several reasons. First, the form is required to be signed on only two occasions: when a person commences government employment and when an employee wishes to change coverage. Thus, filing the form anytime after a person starts a government job is an affirmative indication that the employee wants to change coverage, particularly if the form is filled out differently the second time. Second, the form explicitly states that employees "will not have coverage for any option[s] for which[they] did not sign," and explains that "[t]his election will supersede all previous elections. If you have had an option and wish to keep it, you must reelect it by signing the appropriate box." The form therefore makes explicit how one declines coverage and how one retains it. And finally, both the SF 2817 and SF 2818 refer to the SF 2817 as a form that enables one to "decline" optional coverage.
 
 
 31
 Despite the limited requirements for SF 2817 imposed by FEGLIA, the beneficiaries argue that cancellation of insurance coverage under FEGLIA occurs only when an insured "affirmatively" waives it, that is, when an employee affirmatively signs a specific statement that she is canceling coverage. They rely on language in two cases for this proposition, McDade v. Hampton, 469 F.2d 142, 143-44 (D.C.Cir.1972) ("[I]nsurance coverage is automatic under the Act unless the employee affirmatively waives it"), and Hughes v. Goodwin, 860 F.Supp. 272, 275 (D.Md.1994) ("In order to withdraw from the program, an employee affirmatively must waive coverage"). Neither of these cases, however, indicates that execution of a waiver form is not an affirmative waiver, and both of these cases held that the filing of a standard waiver form is a sufficiently affirmative act of waiver. See McDade, 469 F.2d at 144; Hughes, 860 F.Supp. at 278.
 
 
 32
 In this case, Grooms completed a second SF 2817 in March 1993 in a way that waived her optional insurance coverages. She was not required to sign or file the form, but chose to do so. Her act of executing and filing the second SF 2817 thus was an affirmative act of waiver and wholly sufficient under the statutory and regulatory framework of FEGLIA. Even if circumstantial evidence indicates that she did not intend to cancel her optional insurance, the fact remains that she did so.
 
 
 33
 Because FEGLIA preempts state law on the process for electing insurance coverage offered by FEGLIA, the SF 2817 is conclusive and there is no reason for us to look beyond it. Furthermore, the government employees' careless administration of Grooms' SF 2817 filing cannot estop the government or require it to pay out benefits, a fact recognized--and not challenged--by the beneficiaries. See OPM v. Richmond, 496 U.S. 414, 426, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("[J]udicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized"); Chrobak v. Metropolitan Life Ins. Co., 517 F.2d 883, 887 (7th Cir.1975) (holding that policy coverage cannot be expanded by erroneous government notices or billings of premiums). Thus, the government employees' method of handling Grooms' affairs is immaterial to the determination of whether Grooms' cancellation was effective.
 
 
 34
 For the foregoing reasons, the decision of the district court is
 
 
 35
 AFFIRMED.