**UNITED STATES of America, Petitioner–Appellee,**

v.

**James L. COX, Respondent–Appellant.**

**UNITED STATES of America, Petitioner–Appellant,**

v.

**James L. COX, Respondent–Appellee,**

and

**Konrad Jerome Charles School, Respondent.**

Nos. 91–7044, 91–6554.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1991.

Decided May 22, 1992.

---

George Alan DuBois, Jr., Asst. Federal Public Defender, Raleigh, N.C., argued (William E. Martin, Federal Public Defender, Jeffrey L. Starkweather, Asst. Federal Public Defender, on brief), for respondent-appellant.

G. Norman Acker, III, Asst. U.S. Atty., Raleigh, N.C., argued (Margaret Person Currin, U.S. Atty., Stephen A. West, Asst. U.S. Atty., on brief), for petitioner-appellee.

Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

The defendant, James Cox, appeals from a district court finding that Cox suffers from a mental disease or defect such that his release from the Federal Correctional Institution at Butner, North Carolina ("FCI–Butner") would cause a substantial risk of bodily injury to another person or serious damage to the property of another person. On cross-appeal, the Government appeals the district court's order requiring the Department of Justice (the "DOJ") to pay the costs of a psychiatric examiner selected by Cox to examine Cox in connection with the district court proceeding. We affirm the district court's decision on both issues.

## I.

On April 17, 1989, James Cox was convicted, in the Middle District of Florida, of mail theft by a postal employee. He was sentenced to two years of imprisonment at FCI–Butner. Prior to his scheduled mandatory release date, December 20, 1990, the acting Warden of FCI–Butner filed a Certificate of Mental Disease or Defect and Dangerousness, pursuant to 18 U.S.C.

§ 4246, indicating that his staff believed that Cox's release would create "a substantial risk of bodily injury to another person or serious damage to the property of another" and requesting that "Cox be given a hearing to determine whether he should remain committed" at FCI–Butner.

Cox received a hearing on February 27, 1991, before the United States District Court for the Eastern District of North Carolina. The trial court found "by clear and convincing evidence that respondent is presently suffering from a mental disease or defect, as the result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." The trial court ordered Cox committed to custody, but further ordered that the Government take immediate steps to effectuate Cox's conditional release. Cox appeals the district court's finding denying him his unconditional release.

Prior to the proceeding, Cox was examined by two psychiatrists: one, Dr. Bruce Berger, designated by the court, and the other, Dr. Billy Royal, selected by Cox, as provided under 18 U.S.C. § 4247(b). The district court, by order dated February 5, 1991, ordered the DOJ to pay the costs of Dr. Royal's services. On February 27, 1991, the Government filed a motion to set aside the part of the district court's order requiring it to pay Royal's fees. On March 27, 1991, the district court denied the Government's motion. The Government brings a cross-appeal on the district court's February 5, 1991 and March 27, 1991 orders requiring the DOJ to pay Royal's fees.

## II.

█ The trial court's ruling denying Cox unconditional release from FCI–Butner is a factual determination that will be overturned by this court only if clearly erroneous. Fed.R.Civ.P. 52(a). In order to commit Cox under 18 U.S.C. § 4246, the court must find both: 1) that he is suffering from a mental disease or defect, and 2) that as a result of his mental disease, his release would create a substantial risk of harm to another or the property of another.

Cox does not contest the finding that he is suffering from a mental disease or defect. Both psychiatrists who testified at the district court proceeding agreed that Cox suffered from mental illness, disagreeing only on the exact classification of his disease.

Cox does contest the finding that his unconditional release would pose a threat of harm to the person or property of another. However, there is sufficient evidence in the record to preclude this court from finding that the district court was clearly in error on this issue. Dr. Berger gave his professional opinion that Cox would pose a substantial risk to other persons if unconditionally released. He based this opinion on: 1) Cox's own opinions, expressed during therapy at FCI–Butner, regarding his inability to control dangerous impulses; 2) the difficulty in successfully treating Cox's condition with commonly used medications; 3) Cox's episodes of violent behavior prior to his incarceration; and 4) the possibility of Cox returning to his previous substance abuse. Each of these factors, in turn, has adequate support in the record.

Dr. Royal disagreed with Dr. Berger about the degree of risk posed by Cox's unconditional release, but did admit that Cox's release, without the condition that he continue medication and therapy, could pose a danger to other persons. It was not clearly erroneous for the trial court to accord Dr. Berger's testimony greater weight than Dr. Royal's testimony, particularly since Berger, unlike Royal, had observed Cox over an extended period of time.

## III.

The second issue, raised by the Government on cross-appeal, concerns which party bears responsibility for Dr. Royal's fees. Royal testified pursuant to 18 U.S.C. § 4247(b), which states:

A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner. Each examiner

shall be designated by the court, except that if the examination is ordered under section 4245 or 4246, upon the request of the defendant an additional examiner may be selected by the defendant.

Cox's examination was ordered under section 4246, so he was entitled to select an additional examiner. Cox selected Dr. Royal, and the trial court issued the appropriate order.

The Government argues that under the prevailing "American Rule" of litigation, in the absence of any specific fee-shifting provision, a party must bear its own litigation costs. Since Royal was selected by Cox and testified on his behalf, the Government argues that Cox (actually the office of the Federal Public Defender for the Eastern District of North Carolina, which represented Cox) bears the responsibility for Royal's fees.

The Federal Defender's Office argues that, under the statutory language quoted above, Royal was a psychiatric examiner appointed by the court. As such, he should be considered neither a witness for the Government nor a witness for the defense, but a neutral officer of the court. Further, the Federal Defender's Office cites guidelines contained in the *Guide to Judiciary Policy and Procedures* (the "Guidelines"), which indicate that the DOJ will be responsible for psychiatric examiners selected by the defense under section 4246. *Guide to Judiciary Policy and Procedures*, Vol. VII, chapter III, sect. A, summary chart. The Guidelines were promulgated by the Administrative Office of the United States Courts ("AOUSC"), which administers the funds appropriated to the Federal Public Defender Services, and acknowledged, without objection, by officials of the DOJ. *See* Letters of William P. Tyson, Director, Executive Office of the United States Attorneys, United States Department of Justice, June 26, 1986 and August 19, 1986. The Government contends that the Guidelines are not binding and, alternatively, that the Federal Defender's Office had notice that the DOJ no longer intended to abide by the Guidelines.

■ We decline to rule on whether a psychiatric examiner appointed pursuant to section 4246 should be considered an officer of the court or a witness for the defense. We agree with the sentiment expressed by the district court that "[d]isputes such as this are properly resolved by the responsible agencies in Washington, not in this court." Accordingly, we believe that final resolution, for prospective cases, regarding which government agency bears responsibility for fees under section 4246 should be made by negotiation between the interested agencies or by submission of the matter to the Comptroller General of the United States. *See, e.g.,* 50 Comp.Gen. 128 (August 25, 1970) (delineating proper allocation of expenses related to mental competency hearings and psychiatric trial services provided to indigent defendants).

■ With regard to the instant case, we hold that the DOJ is estopped from declining payment of Dr. Royal's fees. An equitable estoppel may arise when there is voluntary conduct by the party to be estopped that induces detrimental reliance on the part of the party asserting the estoppel. *See, e.g., Learning Works, Inc. v. Learning Annex, Inc.,* 830 F.2d 541, 545 (4th Cir.1987). In this case, the Guidelines clearly indicate that the DOJ would assume responsibility for fees incurred in relation to section 4246 proceedings. *Guidelines,* Vol. III, sect. A, summary chart. The DOJ informed AOUSC that it had "no objections to the guidelines with respect to the payment responsibilities of the Department of Justice." Letter of William P. Tyson, August 19, 1986. Furthermore, the Federal Defender's Office relied upon this representation when requesting budget appropriations. Affidavit of William E. Martin, Federal Public Defender for the Eastern District of North Carolina, pp. 1–2. In fact, the Federal Defender's Office could not have successfully requested funds to pay for section 4246 proceedings in light of the DOJ's apparent acceptance of the payment obligations outlined in the Guidelines. *Id.* As the record indicates, the Federal Defender's reliance on the DOJ's representation was entirely reasonable, and the DOJ should have known that the Federal

Defender's Office would rely upon that representation. On the facts of this case, we find the requisite elements of equitable estoppel.

DOJ contends that the Federal Defender's Office was, or should have been, on notice that the DOJ no longer intended to honor its acceptance of the Guidelines. However, we believe that the August 4, 1989 letter, indicating that there was "fairly heated argument" about responsibility for section 4246 expenses, was insufficient to put the Federal Defender's Office on notice that the DOJ was definitively reneging on its earlier commitment. There is no other evidence in the record indicating that the DOJ had attempted to withdraw its acceptance of the Guidelines.

■ Finally, the DOJ argues that the Government may not be estopped by the actions of its agents. It is true that the United States Supreme Court has held that "the Government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Services, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). However, *Community Health Services* and the other decisions in this line of cases all involve a purely private litigant seeking to preserve a financial gain by estopping the Government from enforcing the prevailing law. *See, e.g., Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). In those situations, the Court has held that the Government's interest in preserving a uniform rule of law outweighs any equitable rights the private litigant could assert by pleading estoppel. *Community Health Services,* 467 U.S. at 60, 104 S.Ct. at 2224.

In the present case, by contrast, we are presented with a situation in which the disputed sum will, one way or the other, be paid by an agency of the federal government. The beneficiary of the estoppel holding will not be a private individual, but the Federal Defender's Office and the AOUSC. Thus, a finding of estoppel here will not cause any non-uniformity in the application of the law among individuals, such as the Court decried in *Community Health Services. Id.* Nor will estoppel against the DOJ cause funds to be appropriated in contravention of Congressional authority as in *Richmond.* 496 U.S. at 424–28, 110 S.Ct. at 2470–73, 110 L.Ed.2d at 398–401. In fact, application of the estoppel doctrine in the present case will have the opposite effect—encouraging the orderly appropriation of funds by preventing government entities from refusing to make budgetary expenditures on items for which they have previously accepted financial responsibility.

As a result, we hold that prior cases that have restricted the application of estoppel against the Government are inapposite in the present factual context.* The Federal Defender's Office has proven the traditional elements of an estoppel claim and, therefore, we find that the DOJ is responsible for payment of Dr. Royal's fees. As mentioned above, we decline to state a rule, with prospective application, as to which party should pay the expenses related to section 4246 proceedings. That matter is an internal fiscal dispute within the federal bureaucracy and should be resolved by appropriate means within and between the interested agencies. The order of the district court is hereby

AFFIRMED.

---

* The Supreme Court indicated the potential viability of this distinction in *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In *Hansen,* the Court declined to invoke estoppel against the Government to benefit a private litigant who sought to recoup Social Security benefits which she had not collected because of her reliance on the erroneous advice of a government social worker. Acknowledging that some lower federal courts had recognized estoppel against the Government in situations where "estoppel did not threaten the public fisc," the Court ruled, "We need not consider the correctness of these cases. We do think that they are easily distinguishable from the type of situation presented in this case...." *Id.* at 788, n. 4, 101 S.Ct. at 1471, n. 4.