**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Petitioner-Appellee,

v.                                                          No. 97-7524

KENT ALLEN CRAWFORD,
Respondent-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CA-97-620-5-F-2)

Submitted: October 9, 1998

Decided: November 16, 1998

Before HAMILTON and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William Arthur Webb, Federal Public Defender, G. Alan DuBois,
Assistant Federal Public Defender, Raleigh, North Carolina, for
Appellant.  Janice McKenzie Cole, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Kent A. Crawford appeals from the district court's order adopting the recommendation of the magistrate judge that Crawford continue to be committed to the custody of the Attorney General of the United States. We find that the district court did not clearly err in finding that Crawford presently continues to suffer from a mental disease or defect such that his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. Consequently, we affirm.

Crawford was convicted of twelve counts of mailing threatening communications and one count of extortion. The district court sentenced him in November 1993 to five years of imprisonment followed by three years of supervised release. Crawford began serving his sentence at the Federal Correctional Unit in Tallahassee, Florida, but was transferred to the Federal Correctional Institution in Butner, North Carolina, in March 1994. Pursuant to a request by the Government, the district court committed Crawford in June 1994 to the custody of the Attorney General for care and treatment of a mental illness or defect during his incarceration. See 18 U.S.C. § 4245 (1994).

In August 1997, prior to Crawford's projected release date of September 15, 1997, the Government filed a certificate of mental disease or defect and dangerousness with the district court requesting a hearing to determine whether Crawford should remain committed to the FCI-Butner psychiatric hospital beyond his release date. A magistrate judge conducted a competency hearing and recommended a finding that Crawford was "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." The district court adopted the magistrate judge's recommendation and ordered Crawford committed to the custody of the Attor-

2

ney General pursuant to 18 U.S.C. § 4246 (West 1985 & Supp. 1998). The district court also ordered the Attorney General to release Crawford to the appropriate official of the state in which he is domiciled or was tried if such state will assume responsibility for his custody, care, and treatment. The court further ordered the Attorney General to make all reasonable efforts to cause such a state to assume such responsibility, but ordered that if the state would not assume such responsibility, the Attorney General should hospitalize Crawford for treatment at a suitable facility until either the state assumed responsibility or Crawford's mental condition improved such that his release would not create a substantial risk of bodily injury to another person or serious damage to the property of another.

A person may be committed under 18 U.S.C. § 4246 only if the district court finds by clear and convincing evidence that he suffers from a mental disease or defect as a result of which his release would create a substantial risk of harm to others or to the property of others. The government must establish dangerousness under§ 4246 by clear and convincing evidence. See § 4246(d). The district court's finding that the government has established dangerousness by clear and convincing evidence will not be overturned on appeal unless it is clearly erroneous. See United States v. Cox, 964 F.2d 1431, 1433 (4th Cir. 1992).

We find that the district court's opinion was not clearly erroneous in this case. There is no dispute in the medical evidence that Crawford suffers from a mental illness, and the evidence supports the court's conclusion that Crawford would indeed pose a substantial risk of harm to others or the property of others. Crawford's primary treating psychiatrist, Dr. Ralph Newman, testified at the commitment hearing that Crawford had a primary diagnosis of Borderline Personality Disorder, as well as a diagnosis of "Schizo Triple Personality Disorder." Dr. Newman summarized Crawford's past criminal and psychiatric history. Crawford, who was 39 years old at the time of the commitment hearing, had a lengthy history of mental illness and hospitalization, beginning at the age of sixteen. Dr. Newman noted that Crawford's federal offenses include twelve counts of mailing threatening communications and one count of extortion. These charges stem from his perceived urological problems. Because he believed that a former physician misdiagnosed him, he wrote angry letters to

3

the physician containing threats, which he states he never intended to carry out.

Dr. Newman also testified about Crawford's behavior during his incarceration at FCI-Butner. He said "at best it has been extremely stormy." Crawford spent at least a year and half in seclusion. After Crawford was admitted to FCI-Butner, he spent the first year in seclusion due to threatening self-injurious behavior and violent threats to his treatment team. He threatened to kill his previous doctor if he was released. Crawford expressed suicidal gestures by climbing up on the sink in his cell and threatening to dive headfirst off the sink. Dr. Newman testified about an incident during which Crawford banged his head against the cell and had to have a helmet placed on him. He was also housed in seclusion on other occasions after threatening to kill a specific female staff member if he was not immediately transferred, after a verbal altercation with a group of inmates, and after threatening suicide. Crawford told staff members that if he was ever released from seclusion, they would be "sorry." Crawford was released from seclusion after staff members determined that the risk of him harming himself or others had dissipated. He also sent family members letters he had written in which he demanded that they purchase a rifle for him so that he could kill himself when he was released from prison. His sister felt that these letters were threatening because they expressed hostility towards her and his mother and blamed the family for his incarceration.

Dr. Newman's testimony was consistent with his written case summary, dated May 28, 1997, which was submitted into evidence. Dr. Newman concluded in his report that "due to his intense anger, combined with poor impulse control and severely unstable relationships with others including family members[,] we view [Crawford] as posing a risk of bodily harm to others or of serious damage to the property of others if released to the community."

At the request of Crawford's counsel, Dr. Billy W. Royal conducted an independent psychiatric evaluation of Crawford. In his written report, Dr. Royal concluded that Crawford was suffering from Schizophrenia, Residual type. Although Dr. Royal did not specifically address Crawford's dangerousness, he noted that Crawford's "lack of judgment and insight regarding his thinking and actions is pro-

4

nounced" and he suggested that Crawford's "history of pathology within his family, his lack of any successful history and the lack of a supportive and capable family suggests a poor prognosis." Crawford testified that he intended to harm no one but himself and posited explanations for some of his actions.

On appeal, Crawford claims that the Government failed to provide clear and convincing evidence of his dangerousness. He first contends that although he does have a history of threatening others, there is no evidence that he has ever committed a serious violent crime or seriously injured another person. Crawford does not dispute, however, that he has a history of making threats against others. Dr. Newman stated in his May 28 case summary that while "[h]e has shown no overt violence during his incarceration, [ ] we attribute this to Mr. Crawford being placed in [s]eclusion, most often in a single cell, when he began making threats either verbally or in writing." Dr. Newman also noted that on numerous occasions, "Crawford stressed that the consequences of any violent act meant nothing to him since he was going to commit suicide regardless of his situation."

Overt acts of violence are not required to demonstrate dangerousness under 18 U.S.C. § 4246. See United States v. Steil, 916 F.2d 485, 487-88 (8th Cir. 1990) (violent delusions and threats are sufficient to prove dangerousness, even though the defendant never had the opportunity to act on them). The evidence in this case shows that even in the most controlled environment, with trained psychological staff, Crawford continues to exhibit threatening behavior. His strong disavowment that he has any present intention to harm anyone is belied by the evidence that he poses a substantial risk of bodily harm to others or serious damage to the property of others. The very fact that he has made statements that he will commit suicide with a firearm poses a substantial risk of danger to other people.

Lastly, Crawford claims that his three-year supervised release term would adequately protect him and the public upon his release from prison. He notes that a specific condition of his supervised release is that he submit to mental health aftercare. Crawford testified, however, that he does not intend to submit to supervised release. He stated, "I think probation is communism, and I'm not going to give the United States any probation." Furthermore, Dr. Newman stated in his case

5

summary that "[i]t is our opinion that Mr. Crawford will continue to require inpatient psychiatric treatment for the foreseeable future." Dr. Newman testified that the commitment of Crawford and the subsequent attempts at providing aftercare to the Bureau of Prisons would be more effective for his condition than "the supervised release, mental care component." Dr. Newman concluded that Crawford requires hospitalization as opposed to "post-out-patient aftercare."

Accordingly, we find that the district court did not clearly err in committing Crawford. We therefore affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6