**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PAUL NAGY,

*Defendant-Appellant.*

No. 00-7031

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-98-951-5-BO-2)

Submitted: March 13, 2001

Decided: March 26, 2001

Before NIEMEYER and MOTZ, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Michael D. Bredenberg, Special Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Paul Nagy appeals the district court's order adopting the recommendation of the magistrate judge that Nagy continue to be committed to the custody of the Attorney General of the United States in accordance with 18 U.S.C.A. § 4246 (West 2000). We find that the district court did not clearly err in concluding that Nagy presently suffers from a mental disease or defect such that his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. Therefore, we affirm.

In 1995, Nagy allegedly called the White House and asked to speak with the President about problems he was having with social security payments. During one of his conversations, he threatened to cut off the head of a White House telephone operator. When Secret Service agents went to Nagy's apartment to investigate this incident, Nagy fired shots inside his apartment. The agents arrested Nagy. Among the items subsequently confiscated from the apartment were numerous firearms, a bullet-proof vest, ammunition, pepper mace, and an electronic stun gun. Nagy was found not competent to stand trial on federal charges in New York and was committed to the custody of the Attorney General until such time that his competency was restored. 18 U.S.C.A. § 4241 (West 2000).

Nagy was admitted for treatment at FCI-Butner. By February 1997, Butner staff members felt that his competency had been restored, and Nagy returned to New York in March 1997 to stand trial. However, Nagy ceased taking his prescribed medication. His condition deteriorated, and he again was found incompetent to stand trial on the federal charges. The district court in New York ordered that Nagy be committed once more to the Attorney General's custody until restoration of competency. Nagy returned to Butner in August 1998.

A magistrate judge conducted a commitment hearing on March 28, 2000. Dr. Michael Arthur Schafer, a staff psychiatrist at Butner, testified at the hearing that Nagy suffered from delusional disorder-persecutory type. Further, Dr. Schafer stated that this mental disease or defect was such that Nagy, if released, would pose a danger to others or the property of others. This opinion was based on: the events surrounding the 1995 incident, including the discovery in Nagy's apartment that he was, in Dr. Schafer's words, "storing an arsenal"; Nagy's lack of social support in the community; his lack of family in the United States who could help him; and his history of chronic unemployment, which allows for free time to dwell on his delusional beliefs.

Dr. Schafer also testified that he had reviewed the written report of Dr. George Corvin, a forensic psychiatrist who evaluated Nagy in January 1999 at the request of the Federal Public Defender. The record reveals that, like Dr. Schafer, Dr. Corvin diagnosed Nagy as suffering from delusional disorder-persecutory type. Dr. Corvin concluded that Nagy met the criteria for commitment under 18 U.S.C.A. § 4246(d) for a number of reasons, including: his having fired a gun when Secret Service agents went to his apartment; his stockpiling weapons as a result of his belief that he was being harassed; his fixed persecutory delusions; the lack of community support and financial resources; his chronic unemployment; his significant history of non-compliance with mental health treatment; and his lack of insight into his need for such treatment. Dr. Corvin expressed little doubt that if Nagy were released, he would immediately discontinue all such treatment.

Following the hearing, the magistrate judge issued a report and recommendation finding the existence of clear and convincing evidence that Nagy suffered from delusional beliefs of being persecuted. As a result of this mental illness, there was clear and convincing evidence that Nagy's release would pose a substantial risk of bodily injury to another person or to the property of another. Therefore, the magistrate judge recommended that Nagy be committed to the custody of the Attorney General in accordance with 18 U.S.C.A. § 4246(d). The district court adopted the recommendation over Nagy's objections. This appeal followed.

A person may be committed to the custody of the Attorney General for a regimen of medical, psychological, or psychiatric care or treatment if the district "court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C.A. § 4246(d). We will overturn a district court's finding that such dangerousness exists only if the finding is clearly erroneous. *United States v. Cox*, 964 F.2d 1431, 1433 (4th Cir. 1992).

Here, both Dr. Schafer and Dr. Corvin agreed on Nagy's diagnosis and gave cogent, detailed reasons for opining that his release would pose a substantial risk of bodily injury to others or serious damage to the property of another. We find no clear error in the district court's order, and we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*