**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 22-7115

---

UNITED STATES OF AMERICA,

Petitioner − Appellee,

v.

CORIE MCNAIR,

Respondent – Appellant.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:05−hc−00502−BO)

---

Submitted:  December 5, 2023                              Decided:  May 6, 2024

---

Before DIAZ, Chief Judge, QUATTLEBAUM, Circuit Judge, and Roderick C. YOUNG, United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Vacated and remanded by unpublished per curiam opinion.

---

**ON BRIEF:**  G. Alan DuBois, Federal Public Defender, Jennifer C. Leisten, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, Genna D. Petre, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Corie McNair appeals the district court's decision to revoke his conditional release from civil commitment. While his appeal was pending, we decided *United States v. Perkins*, 67 F.4th 583 (4th Cir. 2023). There, we established the standard of proof that applies in revocation proceedings and clarified the process by which the district court must make its findings. Because the district court didn't have the benefit of *Perkins* when it revoked McNair's release, we vacate its order and remand for further proceedings.

I.

A.

Almost twenty years ago, McNair was civilly committed, pursuant to 18 U.S.C. § 4246(d). He was hospitalized at the Federal Medical Center in Butner, North Carolina.

McNair's mental condition improved with treatment. He was conditionally released twice previously, pursuant to 18 U.S.C. § 4246(e). Both times, though, he violated the conditions of his release and was recommitted.

Most recently, McNair was released on November 18, 2020. The district court imposed twenty-six conditions of release. As relevant here, Condition 3 required that McNair live at Guide Light Elderly Care Community in Oakland, California, and follow the facility's rules. And Condition 6 required that McNair "[r]emain in treatment and maintain any prescribed medications." J.A. 51.

At the end of January 2021, Guide Light terminated McNair's placement because he had threatened a staff member. The facility's director reported that McNair harassed

2

other residents, such as by "telling them that they needed to take baths and that they were dirty." J.A. 103. When the director sought to call the police, McNair threatened, "If you call the police on me, that'll be the last time you ever call the police." J.A. 103.

McNair's probation officer, Nicole Brown, secured McNair temporary housing. She then asked that the government move to modify Condition 3 so that McNair could reside at GeoCare Residential Reentry Center in San Francisco, California. The district court granted the motion.

But on McNair's second day at GeoCare, the facility terminated his placement because he was insolent toward a staff member. The facility's director reported that McNair refused to follow the facility's quarantine policy. He became confrontational and threatened, "You better check yourself before you wreck yourself." J.A. 106. After being confined to a private room, McNair was "loud and belligerent" and exhibited delusional thoughts, "insisting he was 'Mack Jackson' and not Corie McNair." J.A. 85.

McNair was hospitalized for a two-day psychiatric hold, after which Brown again secured him temporary housing. This time, though, she advised the government that McNair was "no longer appropriate for continued release in the community." J.A. 87.

B.

1.

The government moved to revoke McNair's release. It claimed that McNair had failed to comply with his prescribed treatment regimen and conditions of release. Specifically, McNair violated (1) the original Condition 3, (2) the modified Condition 3, and (3) Condition 6.

3

The government supported its allegations with Brown's affidavit. As to the alleged violations of Condition 3, Brown recounted the reports from Guide Light and GeoCare. For Condition 6, she explained that after reluctantly receiving his injectable at a mid-February medication appointment, McNair said that he didn't want further treatment. Brown claimed that he was due for another dose "on approximately" February 26, 2021, but hadn't received it as of the date of her affidavit (March 2, 2021). J.A. 87.

The district court issued a warrant for McNair's arrest and directed that he be returned to Butner, pending his revocation hearing. It also ordered that Butner conduct a psychological evaluation to inform the court's revocation determination.

2.

At the hearing, McNair denied the alleged violations. Brown testified for the government. She recounted the incidents from Guide Light and GeoCare, as reported to her by the directors.

Brown also testified that she suspected that McNair wasn't compliant with his medication at the time of the incidents. She believed that McNair had stopped taking his oral medication, and McNair had said that he didn't want to receive his injectable anymore. But Brown admitted that she had no proof of McNair's noncompliance. And at the medication appointment that she attended, McNair received his injectable. The government didn't enter McNair's medical records into evidence.

McNair's Butner psychologist, Evan Du Bois, also testified for the government. Du Bois identified McNair's diagnosis as schizoaffective disorder, bipolar type, and explained McNair's symptoms, including delusional beliefs and manic episodes. In the past, Du Bois

4

said that he had observed McNair's "maximum level of disorganization or hostility." J.A. 128. But he hadn't observed those behaviors since McNair returned to Butner.

Du Bois also testified that when McNair first returned to Butner, he couldn't determine whether McNair had been taking his medication. McNair was "fairly calm," but referred to himself as Mack Jackson—a symptom that Du Bois opined occurs "when [McNair] is either not medication compliant or the medication is not working at that time." J.A. 129. Once at Butner, though, McNair complied with his medication plan.

Based on clinical observations and McNair's history, Du Bois identified medication compliance and the lack of a stable living arrangement as two risk management factors. He recognized that McNair's physical limitations—including a vision impairment, *see* J.A. 172, 182—"reduce his risk to some degree," but also make it "much harder for him to receive some services." J.A. 135. So *if* the alleged violations were true, then Du Bois opined that McNair's continued release posed a risk.

McNair's brother, Jessie, testified that at the time of the alleged violations, McNair interacted positively with Jessie and his family and didn't exhibit any antisocial behaviors. After hearing the evidence, the district court didn't ask the parties to present closing arguments, and neither party objected.

3.

The district court revoked McNair's conditional release. First, it found that McNair violated his conditions of release "as outlined in [the government's] revocation motion." J.A. 152. Although McNair denied the violations, the court said that its finding was "[b]ased upon the testimony" of Brown. J.A. 152.

5

Second, the court found that McNair's continued release would pose a substantial risk of bodily injury to another or serious damage to another's property. The court considered "protective factors," including McNair's strong family support and how his vision impairment makes it difficult for him to adjust to new living situations. But the court was "persuaded by the testimony" of Du Bois and adopted his findings "as outlined in his forensic evaluation." J.A. 152. Specifically, the court considered Du Bois's testimony that "while [McNair] does well in a structured environment and on medication, there is a clear connection between his failure to comply with his medication regimen and an escalating risk of violence to others." J.A. 152.

McNair appealed. But while his appeal was pending, we decided *Perkins*, 67 F.4th 583.

## II.

The issues before us on appeal are whether the district court erred in (1) revoking McNair's conditional release, and (2) dispensing with closing argument at McNair's revocation hearing. As we explain, though, we decide neither and instead return this matter to the district court so that it can make its determination anew, in light of our decision in *Perkins*.

## A.

We turn first to *Perkins*. 18 U.S.C. § 4246(f) provides that to revoke conditional release, the district court must find that (1) the individual failed to comply with his treatment regimen, and (2) "in light of" that failure, "his continued release would create a

6

substantial risk of bodily injury to another person or serious damage to property of another."

But § 4246(f) doesn't specify the standard of proof necessary to support these two determinations, nor the process by which the district court must make its findings.

So as a matter of first impression in *Perkins*, we held that a preponderance of the evidence standard applies to both.[1] 67 F.4th at 615, 637. We also explained that the district court must provide a "thorough and well-supported explanation" of the "reasoned and logical linkage" between the individual's failure to comply with his conditions of release and the court's determination that his continued release would create a substantial risk of harm. *Id.* at 634, 637.

As to the first determination—the non-compliance finding—we said that the government must sufficiently develop evidence of the alleged violations in the record. *See id.* at 637–38. For instance, to support the allegation that the individual missed doses of his medication, the government should provide evidence of "the medication prescribed" and "how often it was missed." *See id.*

As to the second determination—the dangerousness inquiry—we declined to require a "rigid" factoring test. *Id.* at 634. Relying on any set of factors is "impracticable"

---

[1] McNair argues in his reply brief—the only brief submitted post-*Perkins*—that *Perkins* was incorrectly decided, and that Supreme Court precedent requires clear and convincing evidence before revoking conditional release. But "one panel [of this court] cannot overrule a decision issued by another panel." *McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc). And while a panel isn't bound by a prior panel decision that's subsequently made "untenable" by Supreme Court precedent, *see United States v. Banks*, 29 F.4th 168, 175 (4th Cir. 2022) (cleaned up), there's no such precedent making our *Perkins* decision untenable. Accordingly, we decline to address McNair's challenge.

because "concepts of dangerousness" are "increasingly complex, multifaceted, and continually evolving." *Id.* at 616, 634. Instead, the court's dangerousness inquiry must have "sufficient play in the joints." *Id.* at 634.

Importantly, though, the burden is on the government—not the district court—to "develop the factors, statistical risk predictors, or other factual parameters bearing on the individualized inquiry." *Id.* So if the government alleges that the individual missed doses of his medication, it must submit evidence of "the effect of the missed medication[]." *Id.* at 638. Only then does the court have a "sound basis for making reasoned findings on the matter of dangerousness for that particular, alleged violation." *Id.*

If the government doesn't meet this burden, then the court must "direct them to drill down and perform their due diligence." *Id.* at 634. We cautioned against "simply adopting a facility director's recommendation." *Id.* at 636.

With *Perkins* in mind, we turn to the district court's revocation order.

## B.

We review the district court's factual findings for clear error and its legal conclusions de novo. *Perkins*, 67 F.4th at 589 (citing *United States v. Cox*, 964 F.2d 1431, 1433 (4th Cir. 1992) (applying this standard when reviewing a denial of unconditional release)).

The district court didn't have the benefit of *Perkins* when it revoked McNair's conditional release. So, understandably, its findings don't satisfy our newly articulated standards.

8

First, it's unclear what standard of proof the district court applied in making its findings. *See id.* at 637 (identifying this same uncertainty as one of the deficiencies in the district court's revocation order).

Second, it's unclear whether a preponderance of the evidence supports a finding that McNair violated Condition 6—his medication condition. The government didn't offer any medical records about McNair's medication compliance. And Brown's testimony—on which the district court exclusively relied—wasn't conclusive.

For example, she admitted there wasn't any proof that McNair wasn't taking his oral medication. *Compare* J.A. 119 ("It was just something that we felt; that he was not being medication compliant."), *with United States v. Mitchell*, 709 F.3d 436, 443 (5th Cir. 2013) (finding sufficient evidence of a medication violation where the probation officer saw that a prescription bottle contained pills at a time it should have been empty). And although McNair had said that he no longer wanted to receive his injectable, there wasn't any record showing that he actually refused an injection. Indeed, at the appointment Brown attended, McNair *received* his injection.

As we said in *Perkins*, "[t]he medication prescribed, how often it was missed, and the effect of the missed medications is not a matter for argument." 67 F.4th at 638. The government needs to develop this evidence so that the court has a "sound basis" for making its findings "on the matter of dangerousness for that particular, alleged violation." *Id.*

Third, the district court didn't provide a "thorough and well-supported explanation" of a "reasoned and logical linkage" between McNair's violations and its finding that his continued release would create a substantial risk of harm. The court accepted, but didn't

9

explain, Du Bois's testimony that "there is a clear connection between [McNair's] failure to comply with his medication regimen and an escalating risk of violence to others." J.A. 152. The court also didn't explain the connection between its finding that McNair violated the original and modified Condition 3 and its finding of dangerousness.

In sum, the district court's explanation fell short of the requisite findings, as detailed in *Perkins*. But we decided *Perkins* after the district court issued its order, so the court didn't have the opportunity to apply our newly articulated standards. We therefore must remand.[2]

*VACATED AND REMANDED*

---

[2] Given our decision, we don't reach McNair's argument that the district court erred in dispensing with closing argument.